Ackemann v. Stickling, 183 Ill. App. 26.

---

## William D. Ackemann et al., Defendants in Error, v. John H. Stickling et al., Plaintiffs in Error.

### Gen. No. 5,815.

1. VENDOR AND PURCHASER, § 40*—*when owner bound by representations of agent.* An owner who by his conduct knowingly leads his agent to represent to the purchaser that the description in the abstract furnished covered the property to be sold, *held* bound by such representations.

2. PRINCIPAL AND AGENT, § 119*—*when principal bound by representations of agent.* An attorney, furnished by owner with abstracts of title to the property to be sold, and told by the owner that the description covers the property, is sufficiently the agent of the owner to convey such information to the purchaser, and the owner is bound by such repetition of the statement to the purchaser.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

Error to the Circuit Court of Kane county; the Hon. DUANE J. CARNES, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed August 2, 1913.

WALTER E. HALY and G. R. BEVERLY, for plaintiffs in error.

SHOPEN & PAULSON, for defendants in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

Under date of January 28, 1911, John H. Stickling executed the following instrument:

"I, the undersigned, hereby agree to sell the property now owned by me and located at Nos. 160 and 162 Milwaukee Street in the City of Elgin, Kane County, Illinois, and being the Stone Building occupied by the Elgin Fruit and Produce Company and the cement block store building occupied by LaPook & Son, for the sum of twelve thousand ($12,000) Dollars; and out of said amount agree to pay the ordinary expenses of transferring, and also the sum of two hundred ($200) Dollars as commission for the closing of the deal. This said agreement however, to terminate on February 1st, 1911, if not accepted by any prospective purchaser on or before such date. After paying mortgage on above property, surplus to be divided pro rata among all creditors" and delivered the same to Arthur L. Paulson, of Shopen & Paulson, attorneys, who delivered the same to William Grote, president of a bank in Elgin; and Stickling testified that he intended thereby to authorize Grote to make the sale therein mentioned. William D. Ackemann agreed to buy the premises therein described at the price therein named. Paulson obtained from Stickling abstracts of title which described the property, known as 160 and 162 Milwaukee street, by its legal description, and prepared a contract describing the premises in that manner, which was signed by Stickling and wife and afterwards by Ackemann,

and Ackemann paid to Paulson one thousand dollars upon the contract. Shortly thereafter Paulson learned that the stone building described in said original memorandum not only covered the property known as 160 Milwaukee street, but also extended eight feet over upon land owned by a railroad company.

Ackemann then repudiated the contract on that account and demanded his one thousand dollars back from Paulson, and Paulson paid it to him. Stickling then sued Paulson at law to recover said one thousand dollars. Ackemann and Shopen and Paulson then filed a bill in equity against Stickling and wife to cancel said contract and to enjoin the prosecution of said suit at law. After answer, the master, pursuant to a reference, took and reported the proofs and his conclusions and, after exceptions thereto were overruled, the court granted complainants a decree, from which Sticking and wife prosecute this writ of error.

The contract only bounded and described that portion of the two stores which was also described as Nos. 160 and 162 Milwaukee street. It did not include that part of the stone building which projected eight feet over upon the railroad ground. Stickling knew that fact and was paying rent to the railroad company for the use of said eight feet. Paulson, Grote and Ackemann did not know that any part of said building rested on land not owned by Stickling. Stickling was indebted to the bank of which Grote was president and was also indebted to various other persons represented by Shopen and Paulson, and Paulson had been trying to induce Stickling to sell this real estate and pay these debts. After the premises had been orally sold to Ackemann, Paulson asked Stickling for the abstracts in order to prepare a written contract and also that the title might be examined. Stickling delivered to him the abstract of one lot, and told him where to get the other and Paulson procured it. Paulson testified that he then asked Stickling if the descriptions of the premises in the abstracts covered

the premises described in the original memorandum, and that Stickling told him that they did. Paulson then prepared the contract with only these descriptions in it, and procured it to be signed by Stickling and wife. Paulson then went with the contract to Grote and Ackemann, and Paulson started to read the contract. When he reached the descriptions, the proof shows that Ackemann said that those descriptions did not mean anything to him, and Grote asked Paulson if that was the legal description for the two stores and Paulson replied that Stickling told him that it covered those two stores and thereupon Ackemann and Grote said that it was not necessary to read the descriptions, and Paulson then omitted the descriptions, and after the rest of the contract was read Ackemann signed it. Stickling testified that he did not tell Paulson that those descriptions covered those two stores. It is also argued in his behalf that neither Paulson nor Grote were his agents and that they had no right to make such a statement to Ackemann and that if Ackemann had read or heard the description in the contract, as prepared, he could not fail to note that it did not cover all of the stone building, since Ackemann was in business in a building just beyond this and had been for many years.

It does not necessarily follow, because Paulson testified one way and Stickling another, that therefore the evidence was evenly balanced. We must presume that the master and trial judge believed Paulson. His testimony was reasonable. He had drawn the original memorandum, in which he described the store buildings as well as the number of the premises. When he came to draw the more formal contract and to describe the premises by their legal description by metes and bounds and lot lines and found that that description only conveyed parts of certain lots, the natural caution of a lawyer would lead him to inquire if those descriptions covered the store buildings named in the original memorandum and which had been orally sold to Acke-

mann. If Stickling told Paulson that those descriptions covered those store buildings, the latter was sufficiently the agent of Stickling to authorize him to convey that information to Ackemann and Stickling would be bound by the repetition of that statement to Ackemann. Paulson and Grote were acting in a dual capacity. They were acting for Stickling to sell his lands and Stickling so understood it, for he testified that he understood that by signing the original memorandum he was authorizing Grote to sell the property. While Grote and Paulson could not make statements about the property outside of the contract and the written memorandum, yet we think they were authorized to say that the descriptions in the contract covered the same property described in the memorandum. But, if the evidence were evenly balanced on the question whether Stickling told Paulson that the descriptions in the abstract covered the stores, yet even then Stickling was more than merely silent. He had authorized the sale of the property covered by the store building. He knew that it was that property for which Ackemann was offering twelve thousand dollars. When Paulson asked him for the abstracts of title, he knew that what was meant was the abstracts of the property upon which those stores rested. When he delivered one of the abstracts to Paulson and told him where to get the other, he was thereby representing to Paulson that those abstracts included all the property upon which the store buildings rested. On his own theory he was guilty of deception, and when his agents told Ackemann that these abstracts covered the store properties, they were saying that which his conduct authorized them to state. The bill states the conduct of Stickling in a dual aspect, namely that he made a wilful misrepresentation and that he wilfully concealed a material fact. Obviously he knew that Ackemann, a merchant in an adjoining building, was not giving twelve thousand dollars for a part of a building, when he had in writing offered the sale of

the entire building at that price. He could not fail to know that Ackemann was being deceived.

The decree is therefore affirmed.

*Affirmed.*

MR. JUSTICE CARNES, having tried the case in the court below took no part in this decision.